IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LORENZA ANDRE SAM, § | | |
| TDCJ # 1869077, § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| v. § | | CIVIL ACTION NO. H-12-3425 |
| § | | |
| FORT BEND COUNTY § | | |
| SHERIFF'S OFFICE, *et al*., § | | |
| § | | |
| Defendants. § | | |

## MEMORANDUM AND ORDER

Plaintiff Lorenza Andre Sam, a state prison inmate (TDCJ # 1869077), filed a complaint under 42 U.S.C. § 1983, alleging violations of his civil rights in connection with the right to practice his religion during his confinement in the Fort Bend County Jail [Doc. # 1]. Sam complains that he was denied a Bible and a workbook necessary to complete his religious training in compliance with the tenets of his Jehovah's Witness religion. The Court ordered Sam to submit a more definite statement regarding his allegations [Doc. 9]. After reviewing Sam's allegations, the Court ordered the defendants to file a response.

The defendants have filed a motion for summary judgment supported by copies of jail regulations, grievance records, jail records, and witness affidavits [Doc. ## 15,

15-1, 15-2, 15-3, and 15-4]. Sam has not filed a response. After reviewing all of the pleadings and the applicable law, the Court concludes that defendants' motion should be **granted** and that the complaint must be **dismissed** for the reasons set forth below.

## I.    FACTUAL BACKGROUND

### A.    Sam's Allegations

Sam sues Fort Bend County and the following Fort Bend County Officials: Major Jimmy Leach, Lieutenant Juan Cardenas, and Deputy Connie Lilly. Sam states that he is a practicing Jehovah's Witness [Doc. # 1, p. 4]. He alleges that he was attending a Jehovah's Witnesses Bible Study every Wednesday evening with his mentor, Kelly Williams, and other Jehovah's Witnesses at the jail. *Id.* 8. Sam alleges that participation in the program was required for baptism in compliance with his religious doctrines [Doc. # 9, p. 2]. Sam was placed in segregation on October 9, 2012. During the process, Lt. Cardenas confiscated Sam's Jehovah's Witness Bible and a workbook entitled "What the Bible Really Teaches" [Doc. # 1, p. 8]. Sam alerted Lt. Cardenas about the missing Bible and workbook, and Lt. Cardenas gave him a King James Bible instead. *Id.* When Sam asked Cardenas for his religious book, Cardenas answered, "I'm not getting it!" *Id.* Sam contends that he could not use the King James Bible to practice his religion because Jehovah's name is not used in the translation which is a direct violation of his religious tenets [Doc. # 9, p. 3].

Sam alleges that he was unable to read or use another copy of "What the Bible Really Teaches" at his Wednesday night Bible Study. *Id.* at 4. He claims that he made a formal complaint about the deprivation but that Defendant Deputy Connie Lilly denied it stating that the complaint was unfounded. *Id.* at 7-8, 12-13. Sam also alleges that Kelly Williams tried to talk to Defendant Major Jimmy Leach about getting his religious books returned to Sam but Leach refused to see Williams. *Id.* at 6. Sam implies that he was unable to recover his Bible or his workbook which prevented him from practicing his religion.

Sam also states in his original complaint that he does not want to be retaliated against because of his religion [Doc. # 1, p. 8]. In his more definite statement however, he denies that anyone retaliated against him [Doc. # 9, p. 5]. Sam seeks damages and a declaratory judgment regarding the defendant's violation of his right to practice his religion. He also seeks an order removing the defendants from office.

## B.     Defendants' Response

The defendants have filed a motion for summary judgment under Federal Rules of Civil Procedure 56(c) disputing Sam's claim that they have violated his right to practice his religion. They contend that the evidence shows that Sam continued to practice his religion through meetings with his religious mentor via video monitor. They also assert that Sam was able to use copies of his materials that his mentor gave

3

to him. They further claim that Sam failed to utilize proper channels to recover or replace his confiscated materials by contacting the jail chaplain. They contend that the confiscation had a *de minimis* impact on his religious practices and its effects could have been easily alleviated by contacting the chaplain. They also assert that they are entitled to qualified immunity because there are no facts to support that the confiscation of Sam's property or the denial of its return to Sam was objectively unreasonable.

The defendants present the following records in support of their arguments:

| | | |
|---|---|---|
| Exhibit 1 - | Affidavit of Major James Leach | [Doc. # 15-1, p. 1] |

(Exhibits in Support of Leach's Affidavit)

| | |
|---|---|
| Exhibit A - Jail Organization Chart | [Doc. # 15-2, p. 1] |
| Exhibit B - Inmate Handbook | [Doc. # 15-2, p. 3] |
| Exhibit C - Inmate Segregation Regulations | [Doc. # 15-2, p. 18] |
| Exhibit D - Grievance Against Lt. Cardenas | [Doc. # 15-2, p. 27] |
| Exhibit E - Grievance Resolution | [Doc. # 15-2, p. 29] |
| Exhibit F - Grievance Resolution Appeal | [Doc. # 15-2, p. 31] |
| Exhibit G - Sam's Jail Records | [Doc. # 15-3, p. 1] |
| Exhibit H - Jail Disciplinary Procedures | [Doc. # 15-3, p. 94] |
| Exhibit I - Internal Affairs Procedures | [Doc. # 15-3, p. 98] |

| | | |
|---|---|---|
| Exhibit 2 - | Affidavit of Juan Cardenas | [Doc. # 15-4, p. 1] |
| Exhibit 3 - | Affidavit of Connie Lilly | [Doc. # 15-4, p. 4] |
| Exhibit 4 - | Affidavit of Alan Hatfield | [Doc. # 15-4, p. 8] |
| Exhibit 5 - | Affidavit of Teresa Culverhouse | [Doc. # 15-4, p. 10] |

    Exhibit 6 -    Affidavit of John Williams    [Doc. # 15-4, p. 13]

The records reveal the following: Sam had been in the Fort Bend County Jail since July 13, 2010, and on numerous occasions, had been disciplined for possessing objects that had been modified in a manner making them usable as weapons. Doc. # 15-1, p. 4. He was placed in disciplinary segregation for the twelfth time on October 9, 2012 for possession of contraband consisting of a metal piece removed from a mop. *Id.* He had previously been found with objects that had been similarly modified. *Id.* On one occasion, he had been found with sheets tied together suggesting a planned escape. On another, it was discovered that he had altered the wall of his cell suggesting an escape attempt. *Id.*

Pursuant to jail regulations, Sam's property was taken and inventoried when he was moved to segregation after being found with the piece of metal. *Id.* Inmates in segregation are allowed access to religious counseling and one religious text. *Id.* The policy limiting the items segregation inmates can possess was instituted to reduce the number of potential places in which weapons could be hidden. *Id.* The policy applies to inmates of all religions. *Id.*

Sam filed a grievance against Cardenas on October 9, 2012 [Doc. 15-1, p. 5; Doc. 15-2, p. 28]. On October 18, 2012, Lilly responded with a written denial stating that inmates are not allowed to bring their own personal books, including bibles, into

their cells [Doc. 15-2, p. 30]. She also informed Sam that inmates may request a bible from the chaplain. On October 18, 2012, Sam used an "Inmate Request Form to send Major Leach an appeal requesting his Bible. *Id.* at 32. However, the Inmate Request Form indicates that requests for books and educational requests should be directed to the jail chaplain. *Id.*

The Fort Bend Chaplain, Alan R. Hatfield, filed an affidavit reiterating the requirement that inmates must fill out and submit an Inmate Request Form to the Chaplain's Office to request a book or a Bible [Doc. # 15-4, p. 9]. Hatfield further stated that the Chaplain's Office has a stock of books and Bibles. *Id.* If the requested item is not in stock, the office will get one from one of the ministers who visit and teach at the jail. Hatfield states that Sam never notified the office of his need for a book or Bible although the Office had arranged for him to meet with a minister from the Jehovah's Witness Congregation of Rosenberg. *Id.*

Leach states in his affidavit that he was not in the office when Williams came to see him on October 17, 2012. [Doc. # 15-1, p. 5]. Both Williams and Leach's assistant, Teresa Culverhouse, verify that Leach was absent at that time. [Doc. # 15-4, pp. 12, 14]. Williams further states that Sam did not have his copy of "What Does the Bible Really Teach" on October 17, 2012, but the officials gave Sam three printed chapters from the book by the next time Williams met with Sam. Williams also states

that the jail officials had returned to Sam his own workbook one to three weeks after it was taken and that he was able to continue with his Bible Study. *Id.* at 14. In addition, Sam's visitation log reflects that Williams saw him regularly after he was placed in segregation on October 9, 2012 [Doc. # 15-3, p. 81].

The defendants contend that they are not individually liable because they did not impermissibly burden Sam's religious practices. They further contend that Fort Bend County cannot be held liable because Sam has failed to identify any policy which has caused him to be deprived of a federal protected right.

## II. STANDARD OF REVIEW

### A. Motion for Summary Judgment

A movant is entitled to summary judgment if he shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012). In considering such a motion, this court construes "all facts and inferences in the light most favorable to the nonmoving party." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010) (internal citation and quotations marks omitted). For summary judgment, the movant has the burden of showing that there is an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325. In doing so, the movant must establish the

"absence of evidence to support an essential element of the non-movant's case." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (internal citations omitted). The motion for summary judgment must be denied if the movant fails to meet this initial burden. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001). However, if the movant does succeed in meeting this burden, the non-movant must go beyond the pleadings and identify specific facts showing that there is a genuine issue of a material fact warranting trial. *Id.*

To prove there is an absence of evidence in support of the non-movant's claim, the movant must identify areas that are essential to the claim in which there is an "absence of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). However, the movant "need not negate the elements of the non-movant's case." *Boudreaux v. Swift Transp. Co. Inc.*, 402 F.3d 536, 540 (5th Cir. 2005).

Mere conclusions and allegations are not summary judgment evidence and cannot be used to defeat or support a motion for summary judgment. *Topalian v. Ehrman*¸ 954 F.2d 1125, 1131 (5th Cir. 1992). To successfully oppose a motion for summary judgment, the non-movant must present specific facts showing "the existence of a genuine issue concerning every essential component of its case." *Am. Eagle Airlines, Inc., v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003). If the non-movant fails to point out evidence opposing summary judgment, it is not

8

the court's duty to search the record for such evidence. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).

### B. <u>Qualified Immunity</u>

Defendants assert the defense of qualified immunity, which is an affirmative defense which shields public officials from civil liability for acts committed pursuant to their authorized duties. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Manis v. Lawson*, 585 F.3d 839, 845-846 (5th Cir. 2009). Qualified immunity protects government employees against claims brought against them in their individual capacities "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Wernecke v. Garcia,* 591 F.3d 386, 392 (5th Cir. 2009) (quoting *Harlow*, 458 U.S. at 818) (internal quotation marks omitted). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2085 (2011).

This protection is extended to "'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). It is applicable regardless of whether a government official's reasonable error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Groh v.*

*Ramirez,* 540 U.S. 551, 567 (2004)). The official is immune from suit if the law at the time of the constitutional violation does not give him fair notice that the conduct is unlawful. *Manis*, 585 F.3d at 846 (citing *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)).

Determining whether a public official is entitled to qualified immunity entails a two-part inquiry by the reviewing court. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The first prong of the analysis asks whether, taken in the light most favorable to the party asserting the injury, the facts alleged show that the official's conduct violated a constitutional right that was "clearly established" at that time. *See id*. at 815-16; *Scott v. Harris*, 550 U.S. 372, 377 (2007) (citation omitted). The second prong of the analysis asks whether qualified immunity is appropriate, notwithstanding an alleged violation, because the defendant's actions were objectively reasonable "in light of clearly established law at the time of the conduct in question." *Hampton Co. Nat'l Sur., L.L.C. v. Tunica County, Miss.*, 543 F.3d 221, 225 (5th Cir. 2008) (quoting *Freeman v. Gore*, 483 F.3d 404, 410-11 (5th Cir. 2007)). There is no mandatory sequence that the court must follow in applying the two parts of the qualified immunity test. *Pearson*, 555 U.S. at 236.

The usual summary judgment burden of proof is altered in the case of a qualified immunity defense. *See Gates v. Texas Dep't of Protective and Regulatory*

*Servs.*, 537 F.3d 404, 419 (5th Cir. 2008). An official need only plead his good faith, which then shifts the burden to the plaintiff, who must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law. *See Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005) (citing *Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001)). The plaintiff bears the burden of negating the defense and cannot rest on conclusory assertions, but must demonstrate genuine issues of material fact regarding the reasonableness of the official's conduct. *See Michalik*, 422 F.3d at 262; *see also Ontiveros v. City of Rosenberg, Tex.*, 564 F.3d 379, 382 (5th Cir. 2009) (noting that, to avoid summary judgment on qualified immunity, a plaintiff need not present "absolute proof," but must offer more than "mere allegations") (quotation omitted).

## III. DISCUSSION

Sam's complaint is governed by 42 U.S.C. § 1983, which provides a remedy for violations of civil rights by state actors:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

"Section 1983 'is not itself a source of substantive rights,' but merely provides 'a

method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n.3 (1979)). Thus, to state a claim under 42 U.S.C. § 1983, a plaintiff must show a violation of the Constitution or of federal law, and then show that the violation was committed by someone acting under color of state law. *See Atteberry v. Nacona General Hosp.*, 430 F.3d 245, 252-53 (5th Cir. 2005) (citing *West v. Atkins*, 487 U.S. 42, 48-50 (1988); *Piotrowski v. City of Houston*, 51 F.3d 512, 515 (5th Cir. 1995)).

Sam complains that he has been denied the right to practice his religion by being deprived of his Bible and a workbook. "[I]nmates retain their First Amendment right to exercise religion; however, this right is subject to reasonable restrictions and limitations necessitated by penological goals." *McFaul v. Valenzuela*, 684 F.3d 564, 571-572 (5th Cir. 2012) (citing *Hicks v. Garner,* 69 F.3d 22, 25 (5th Cir.1995). "A restriction impinging on an inmate's constitutional rights must be upheld 'if it is reasonably related to legitimate penological interests.'" *Id*. (citing Florence *v. Board of Chosen Freeholders of County of Burlington*, — U.S. —, 132 S.Ct. 1510, 1515 (2012)). In determining whether a restriction is reasonable, the Court considers: "(1) whether the regulation or action has a logical connection to the legitimate governmental interests invoked to justify it; (2) whether the inmate has an available alternative means of exercising the rights; (3) the impact of accommodation on other

inmates, guards, and prison resources; and (4) the presence or absence of ready alternatives that fully accommodate the prisoner's "rights at *de minimis* cost to valid penological interests." *Id.* (citing *Turner v. Safley*, 482 U.S. 78, 89-91 (1987); *see also Baranowski v. Hart*, 486 F.3d 112, 120 (5th Cir. 2007).

The Religious Land Use and Institutionalized Persons Act ("RLUIPA") offers greater protection for inmates practicing their religion because it requires custodial officials to present "a stronger justification for regulations that impinge on the religious practices of prison inmates." *McFaul*, 684 F.3d at 575 (citing *Mayfield v. TDCJ,* 529 F.3d 599, 612 (5th Cir. 2008)). Under RLUIPA, "[n]o government shall impose a substantial burden on the religious exercise of [an inmate] ... unless the government demonstrates that imposition of the burden on that person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc–1(a)).

**No Infringement on Religious Practices.–** An inmate challenging a government action on the basis that it infringes his right to practice his religion must demonstrate that the action "substantially burdens" his religious exercise. *McFaul*, 684 F.3d at 575 (citing *DeMoss v. Crain,* 636 F.3d 145, 150 (5th Cir. 2011)). To do this the inmate must show that the action "truly pressures the adherent to significantly

modify his religious behavior and significantly violate his religious beliefs." *Id.* (citing *Adkins v. Kaspar,* 393 F.3d 559, 570 (5th Cir.2004)). A government action presents a substantial burden if it "(1) influences the adherent to act in a way that violates his religious beliefs, or (2) forces the adherent to choose between, on the one hand, enjoying some generally available, non-trivial benefit, and, on the other hand, following his religious beliefs." The plaintiff must show that the action prevented him from engaging in conduct mandated by his faith. "This interference must be more than an inconvenience; the burden must be substantial and an interference with a tenet or belief that is central to religious doctrine." *Hicks v. Garner*, 69 F.3d 22, 26 (5th Cir. 1995) (PLRA case) ((citing *Bryant v. Gomez,* 46 F.3d 948, 949 (9th Cir. 1995) (abrogated on other grounds in *Shakur v. Schriro,* 514 F.3d 878, 884–85 (9th Cir. 2008)); *see also Kaemmerling v. Lappin*, 553 F.3d 669, 678 (D.C. Cir. 2008) ("An inconsequential or *de minimis* burden on religious practice does not rise to this level, nor does a burden on activity unimportant to the adherent's religious scheme.").

The defendants' evidence demonstrates that Sam was deprived of his workbook and Bible for only a short period and that copies of part of the materials were given to him within a few days. His original books were returned to him within three weeks and he did not miss any Bible Study meetings. There is no showing that Sam's brief deprivation of his Bible and study materials violated his rights under the First

Amendment or RLUIPA. *DeMoss v. Crain*, 636 F.3d 145, 152 (5th Cir. 2011) (TDCJ regulations preventing Muslim inmate from carrying a pocket copy of the Qur'an with him to the recreation yard, medical clinic or work area did not place a burden on his religious practice). While acknowledging the significance of Bible study to Sam's religion, there is no indication that the defendants' actions forced Sam to "act in a way that violated his religious beliefs," by forcing him to give up his Bible study. *Id.* Nor is there any indication that he was forced to choose between practicing his religion or receiving a generally available non-trivial benefit. *Id.* Moreover, the defendants have shown that Sam had the readily available alternative of contacting the jail chaplain to reclaim his books or to obtain suitable replacements. His failure to take advantage of this option further weighs in favor of finding that there has been no infringement on Sam's right to practice his religion. *McFaul*, 684 F.3d at 574 (citing *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 352 (1987); *Scott v. Miss. Dep't of Corr.,* 961 F.2d 77, 81 (5th Cir. 1992).

**Compelling Government Interest.–** Even if the Court were to find an infringement on Sam's religious beliefs, which it does not, the defendants have demonstrated that restricting Sam's access to property, for a short time, after finding him with a potential weapon was reasonably related to jail security, which was a compelling government interest. The Supreme Court has held that RLUIPA does not

give an inmate's right to observe his religion priority over custodial officials' "need to maintain order and safety." *Cutter v. Wilkinson*, 543 U.S. 709, 722 (2005). Custodial officials can implement policies that interfere with an inmate's religious practices if such policies are based on legitimate concerns about security. *Green v. Polunsky*, 229 F.3d 486, 489 (5th Cir. 2000).

The defendants have shown that their policy of placing restrictions on the property an inmate can take into segregation limits the potential hiding places for weapons. In light of the fact that Sam had been found with a weapon, indeed on multiple occasions, the defendants' actions were clearly reasonable and did not violate Sam's constitutional rights. *Longoria v. Dretke*, 507 F.3d 898, 904 (5th Cir. 2007) (TDCJ's policy of requiring Native American inmates to cut their hair was supported by a compelling state interest because long hair could be used to hide contraband and weapons) (citing *Diaz v. Collins*, 114 F.3d 69, 73 (5th Cir. 1997)); *see also Mayfield v. Texas Dept. Of Criminal Justice*, 529 F.3d 599, 611 (5th Cir. 2008). Therefore, the defendants have shown that Sam's religious literature was confiscated on a temporary basis in furtherance of a compelling government interest, the jail's security and that his right to practice his religion was not substantially burdened.

**No Claim for Damages or Injunctive Relief.–** Sam is no longer in the Fort Bend County Jail. Any claim he may have asserted for injunctive relief is now moot.

*Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002). He is also barred from seeking compensatory damages because he has failed to demonstrate that he suffered any physical injury from the alleged actions. *Jones v. Greninger*, 188 F.3d 322, 326 (5th Cir. 1999), *citing* 42 U.S.C. § 1997e(e); *see also Stauffer v. Gearhart*, — F.3d —, 2014 WL 273973 at *5 (5th Cir. Jan. 24, 2014). Moreover, RLUIPA does not authorize claims for compensatory damages against the defendants in either their official or individual capacities. *Sossamon*, 560 F.3d at 329. Consequently, the claims against the individuals named as defendants must be **dismissed**.

**No Claim Against Fort Bend County.**— Sam also named Fort Bend County as a defendant. Fort Bend County cannot be held liable unless an official (1) violated his clearly established constitutional rights and (2) the violation resulted from a municipal policy or custom. *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 694-695 (1978); *Flores v. County of Hardeman, Tex.*, 124 F.3d 736 (5th Cir. 1997). Having determined that no violation occurred, the Court finds that Fort Bend County cannot be held liable. *Alpha v. Hooper*, 440 F.3d 670, 672 (5th Cir. 2006) (municipality and its police department cannot be held liable where there is a finding that the individual police officer did not violate the plaintiff's rights) (citing *Los Angeles v. Heller*, 475 U.S. 796, 798-99 (1986). Therefore, the claims against Fort Bend County shall be **dismissed**.

## IV.  MOTION FOR COURT APPOINTED COUNSEL

Sam seeks court appointed counsel claiming he needs assistance in researching the law and in gathering evidence in support of his claims. He further asserts that he has been unable to obtain help from organizations such as the American Civil Liberties Union. There is no general right to counsel in civil rights proceedings. *McFaul*, 684 F.3d at 581. The motion [Doc. #16] will be **denied** because there are no extraordinary circumstances in this proceeding which would justify appointment of counsel. *Id.* (citing *Ulmer v. Chancellor,* 691 F.2d 209, 212 (5th Cir.1982)).

## V.  CONCLUSION

For all the foregoing reasons, Sam has failed to show that there is a genuine issue of material fact on any claim he has against the defendants. The Court therefore grants judgment in favor of defendants. It is therefore

**ORDERED** that plaintiff's motion for court appointed counsel [Doc. # 16] is **DENIED**. It is further

**ORDERED** that defendants' motion for summary judgment [Doc. # 15] is **GRANTED**. It is further

**ORDERED** that this prisoner civil rights suit is **DISMISSED with prejudice**.

The Court will issue a separate final judgment.

SIGNED in Houston, Texas, on February 18, 2014.

Nancy F. Atlas<br>
United States District Judge